# Illinois Official Reports

## Appellate Court

---

*Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168

---

| | |
|---|---|
| Appellate Court Caption | RHONDA BARRETT, Plaintiff-Appellant, v. FA GROUP, LLC, an Illinois Limited Liability Company; RED PEPPER'S LOUNGE, INC., an Illinois Corporation; WHALE FISH AND CHICKEN, INC., an Illinois Corporation; WHALE BEEF AND PIZZA, INC., an Illinois Corporation; 87TH FISH CORPORATION, an Illinois Corporation; and WHALES FISH AND CHICKEN II, INC., an Illinois Corporation, Defendants (FA Group, LLC, an Illinois Limited Liability Company; and 87th Fish Corporation, an Illinois Corporation, Defendants-Appellees). |
| District & No. | First District, Fourth Division<br>Docket No. 1-17-0168 |
| Filed | November 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-M1-301591; the Hon. Patricia O'Brien Sheahan, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | John P. Kolb and Courtney Anderson, of Disparti Law Group, P.A., of Chicago, for appellant.<br><br>Steve Grossi, of Bruce Farrel Dorn & Associates, of Chicago, for appellees. |

Panel       JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1  Plaintiff Rhonda Barrett was injured when she stepped in a parking lot pothole and fell. The parking lot was allegedly owned by defendants FA Group, LLC, and 87th Fish Corporation. Plaintiff filed suit against defendants, alleging that they had negligently maintained the parking lot and failed to warn of a dangerous condition. Defendants filed a motion for summary judgment, arguing that the size of the pothole was considered *de minimis* and was not actionable as a matter of law. The trial court granted summary judgment in defendants' favor, and plaintiff now appeals. For the reasons that follow, we reverse.

¶ 2           BACKGROUND

¶ 3  On July 1, 2015, plaintiff filed a complaint against a number of businesses, including defendants,[1] alleging that plaintiff was injured on October 28, 2013, when she "stepped in a pot hole and fell" in a Chicago parking lot due to defendants' negligence.

¶ 4  On September 17, 2015, FA Group, LLC (FA Group) and 87th Fish Corporation (87th Fish) filed a joint answer to plaintiff's complaint. The answer admits that 87th Fish owned and operated the parking lot but denies all other allegations as they relate to either FA Group or 87th Fish. Defendants also raised the affirmative defense that plaintiff did not exercise ordinary care for her own safety and, therefore, was contributorily negligent.

¶ 5  The parties engaged in discovery beginning on December 4, 2015, when the trial court ordered the parties to conduct their discovery with adequate time such that they would complete all discovery and scheduled depositions by March 18, 2016. On June 28, 2016, plaintiff filed a motion to reopen and extend discovery, claiming that defendants never produced their representative for deposition by the end of the discovery period; plaintiff did not explain the three-month delay in filing her motion to reopen discovery. Attached to the motion was a March 10, 2016, notice of deposition to defendants that had scheduled a deposition of "persons most knowledgeable of the condition of the subject parking lot" for March 18, 2016. On July 18, 2016, the trial court denied plaintiff's motion for reopening and extending discovery for the purpose of deposing defendants' representative. The trial court's order did not explain the basis for its denial.

¶ 6  On August 11, 2016, defendants filed a motion for summary judgment. The motion claimed that defects under two inches in height are considered *de minimis* and are not actionable and that defendants were entitled to summary judgment based on uncontroverted

---

[1]On December 15, 2015, the trial court granted plaintiff's motion to voluntarily dismiss defendant Whales Fish and Chicken II without prejudice. On January 5, 2016, the trial court entered default judgments against defendants Red Pepper's Lounge, Whale Fish and Chicken, and Whale Beef and Pizza. Only FA Group, LLC, and 87th Fish Corporation are parties to the instant appeal.

evidence that the depression plaintiff alleges she tripped on had a height difference no greater than half an inch.

¶ 7 Defendants attached plaintiff's discovery deposition to their motion for summary judgment. In her deposition, plaintiff testified that she fell at approximately 10 p.m. on the night of October 28, 2013, while walking to her vehicle in defendants' parking lot after leaving the Red Pepper Lounge. Plaintiff had parked her vehicle in the parking lot; at the time she parked in the lot, there were "a significant amount" of vehicles in the parking lot.

¶ 8 Plaintiff was shown a Google Maps street view image of a parking lot that plaintiff confirmed was an accurate portrayal of the size and layout of the parking lot in which she fell.[2] The Google Maps image was also attached to the motion for summary judgment[3] and appears to portray a small parking lot that was located between two businesses: the Red Pepper Lounge, on the left side of the lot, and Whale Fish Shrimp & Chicken (Whale Fish), on the right side of the lot. The left side of the lot appears to have approximately 10 to 12 angled parking spots along the length of the lot, taking up approximately one third of the width of the lot. The right side of the lot appears to have no designated parking spaces, although the image shows a vehicle parked alongside the Whale Fish restaurant. There is a dumpster in the back right corner of the lot, behind the Whale Fish building, with a vehicle parked in front of the dumpster, behind the building; only the front of the vehicle is visible in the image.

¶ 9 Plaintiff was asked to mark an "X" on the Google Maps image of the parking lot to approximately identify where the depression that allegedly caused her fall was located. The plaintiff marked an "X" surrounded by a circle approximately halfway down the length of the lot. The "X" is located on the right side of the lot, approximately one third of the lot's width away from Whale Fish.

¶ 10 Plaintiff also identified an exhibit that portrayed "[t]he sign for the first five spots for Whales Fish customers."[4] She testified that this sign was located on the wall on the left side of the Google Maps image—on the wall belonging to the Red Pepper Lounge, near the front of the lot. She testified that she interpreted the sign as referring to the five angled parking spots closest to the sign.

¶ 11 Plaintiff testified that, at the time she fell, the parking lot was "fairly dark." There were vehicles parked in the parking lot, including in the spots closest to the Red Pepper Lounge, but she was unable to estimate how full the lot was because "[t]he parking lot was dark." When asked whether there were any artificial sources of light, she testified that "[t]here may have been one dim light" near the sign reserving parking spaces for Whale Fish customers. Plaintiff testified that people were also parking their vehicles at the back of the lot parallel to the buildings, in the same direction that the vehicle in the Google Maps image was parked alongside the Whale Fish building. Plaintiff parked her vehicle in the same way, near the

---

[2]The image was from October 2015, and plaintiff testified that "this parking lot looks like it's been done now" but testified that the layout and size of the parking lot remained the same as it had been at the time of her fall.

[3]The images attached to the motion for summary judgment are poor quality copies. However, the parties supplemented the record on appeal with better-quality versions of those images.

[4]This exhibit was not attached to the motion for summary judgment and is not included in the record on appeal.

- 3 -

back right corner where the dumpster was located in the Google Maps image, parking in front of a different vehicle and blocking that vehicle; plaintiff spoke to that vehicle's driver, who was still in the vehicle at the time, and agreed to move her vehicle out of the way when the other woman wished to leave.

¶ 12    Plaintiff testified that she had been in the Red Pepper Lounge with friends for approximately an hour when she was asked to move her vehicle by the owner of the vehicle plaintiff had blocked in. Plaintiff left the Red Pepper Lounge to move her vehicle and began walking toward her vehicle when "I must have stepped down into the hole. *** [T]he heel of my shoe went down into the broken asphalt—the pothole, and it wedged between there. The front of my foot was still in my shoe, and it jolted me forward. I tried to break my fall. The concrete literally ate [my] knee and my face. I saw a white light, and everything went black."

¶ 13    Plaintiff testified that she was not using her phone while she was walking to her vehicle and that, immediately prior to her fall, she was "looking around the parking lot to see if there were any suspicious characters, and—I mean, I paid attention to my surroundings." When asked whether she was looking down at the time of her fall, she testified that "I'm looking around. I know I looked down at one point when I was walking towards my car. Ladies watch their step when they're walking." She testified that she had not walked across the parking lot when entering the Red Pepper Lounge. Instead, when she exited her vehicle, she walked to the sidewalk, which she followed around Whale Fish and to the Red Pepper Lounge. However, when she exited the Red Pepper Lounge to move her vehicle, she walked across the parking lot.

¶ 14    Plaintiff testified that there was a height difference between the surface of the parking lot and the area where she fell, testifying that "[i]t was a pothole." Plaintiff was unable to estimate "precisely" how much of a height difference was present, testifying only that "I stepped into it." She testified that there was "some broken up asphalt or there was some ground under the asphalt. The heel of my shoe went down into it" and became stuck inside the ground, causing her to jolt forward and fall; the shoe remained stuck inside the hole after the fall until a friend pulled it out. She placed her hands out to brace her fall, and the corner of her phone hit her eye when she fell.

¶ 15    Plaintiff testified that the fall knocked her unconscious and that she injured her right knee and right eye in the process. After returning to consciousness, she needed help to stand up and move to her vehicle, had cuts and bruising on her face, and had broken blood vessels in her eye. She testified that she spent several hours in the hospital, had headaches for a week, had blurry vision for a few weeks, was unable to work for a month, and had trouble both walking and performing normal activities for a period of six months while her knee was healing.

¶ 16    Plaintiff was presented with two photographs of the parking lot that were taken on her behalf on the day after her fall,[5] which she testified accurately depicted the condition of the

<hr>

[5]One photograph was attached to the motion for summary judgment, while the other was attached to plaintiff's response to the motion for summary judgment. These photographs were purportedly reproduced in the supplemental record on appeal. However, we note that one of the photographs appears to have originally been in a landscape page orientation but was reproduced in a portrait page orientation, resulting in the reproduced image cutting off the sides of the original image, along with the exhibit sticker. The pothole which is at issue on appeal appears in both the original and reproduced

parking lot at the time of her fall. She marked the location of her fall on one of the photographs, testifying that "I don't know if it was asphalt or broken ground underneath the broken asphalt, but the heel of my shoe went down in there." The images appear to have been taken from the back of the parking lot, facing the front, so the pothole appears on the left side of the images and the angled parking spots appear on the right side. Both images show two depressions in the surface of the parking lot, located in close proximity to each other. The bigger of the two is a sizable depression, possibly up to a few feet in length; the depression is an irregular shape but is longer than it is wide. The smaller of the two appears to be approximately a third to half the size of the bigger depression and appears to be equally long and wide. There does not appear to be any loose debris inside either depression, but it is impossible to tell with any certainty. The photographs do not contain any markings as to scale, so it is impossible to determine how deep the depressions are. However, there is a sufficient difference between the surface of the parking lot and the depth of the depressions such that there is a dark band of shadow delineating the border of the depressions.

¶ 17     Also attached to the motion for summary judgment was the August 1, 2016, affidavit of Mohammed Nofal, the owner of both defendants FA Group and 87th Fish. In the affidavit, Nofal averred that on October 28, 2013, 87th Fish operated Whale Fish and owned the adjacent parking lot. Nofal averred that he "routinely visited" the premises during October 2013, and that the Google Maps image showed the Whale Fish and the adjacent parking lot. Nofal averred that the only marked parking spots in the parking lot appeared on the left side of the image, along the Red Pepper Lounge, and "[a]side from these marked angle parking spots, there are no other marked parking spots where parking was permitted in the lot on October 28, 2013." Nofal also averred that the depression in the parking lot that plaintiff had marked[6] during her deposition "did not have a height difference of greater than 0.5 inches between the depression and surrounding area in the parking lot on or around October 28, 2013."

¶ 18     On September 6, 2016, plaintiff filed an emergency motion for discovery pursuant to Illinois Supreme Court Rule 191(b) (eff. Jan. 4, 2013), requesting that the trial court allow plaintiff to take Nofal's deposition. The motion claimed that plaintiff had set a deposition of defendants' representatives with the most knowledge of the subject parking lot on the date of the subject occurrence for March 18, 2016. On March 10, 2016, defendants' counsel advised plaintiff's counsel that he would not be producing his clients for the deposition on March 18 due to a previously-scheduled deposition in Wisconsin. Discovery closed on March 18, 2016,

---

images. Both photographs in the supplemental record contain no markings, despite plaintiff being asked to mark one of the photographs during her deposition; the images attached to the motion for summary judgment and response are of such poor quality that it is impossible to determine whether they contain plaintiff's markings. However, a better-quality copy (though still of poor quality) of the exhibit plaintiff was asked to mark is also attached to a motion filed by plaintiff. In that image, a faint "X" can be observed on the larger of the two depressions depicted in the image, near the far end of the depression.

[6]Again, the image of the depression attached to the motion for summary judgment is of such poor quality that no markings, if there are any present, can be observed, and the better-quality image provided in the supplemental record on appeal does not contain any markings. However, in the copy of the image located elsewhere in the record, a faint "X" can be observed on the larger of the two depressions depicted in the image, near the far end of the depression.

and on July 18, 2016, the trial court denied plaintiff's motion to reopen and extend discovery for the purpose of deposing defendants' representatives. However, defendants attached to their motion for summary judgment the affidavit of Nofal, who "has never been disclosed, nor was his produced for deposition." The motion claimed that plaintiff was unable to oppose summary judgment because material information was in control of persons unwilling to give affidavits by reason of hostility.

¶ 19    On September 9, 2016, the trial court granted plaintiff's motion in part, granting plaintiff leave to take Nofal's deposition. However, the court order provided that plaintiff would be required to pay for Nofal's time at the rate of $250 per hour. The order continued the motion to September 15, 2016, "in order to set the deposition date and amend the briefing schedule." On September 15, 2016, the trial court entered an order that "Plaintiff's motion is denied" and vacated the September 9, 2016, order.[7]

¶ 20    On October 1, 2016, plaintiff filed a response to defendants' motion for summary judgment, claiming that the determination that a defect is *de minimis* does not follow a specified mathematical formula, as argued by defendants. She also claimed that there were aggravating factors at the time of the incident that should bar the application of the *de minimis* doctrine, including darkness, presence of vehicles, and broken pavement left sitting inside the depression. As a result, plaintiff argued that summary judgment was precluded by material issues of fact.

¶ 21    Plaintiff attached an affidavit to her response, averring that she tripped and fell in defendants' parking lot at 10 p.m. on October 28, 2013, on a pothole with a height difference "large enough for [her] two-inch heel to get wedged in between," and that she tripped on broken pavement rather than a deviation in height. She further averred that it was "very dark," there was only "one dim light," and she could not observe the pothole.

¶ 22    On November 17, 2016, the trial court granted defendants' motion for summary judgment. The trial court based its decision on the "*de minimis* doctrine": that injuries caused by defects with a height difference of less than two inches are not actionable in the absence of aggravating factors. It concluded that plaintiff had failed to show the presence of aggravating factors sufficient to bar the application of the *de minimis* doctrine. Finally, it found that "[t]o the extent plaintiff's affidavit conflicts with her testimony, the court will not consider such contrary evidence." However, it found that plaintiff's affidavit did not contain facts that would overcome application of the *de minimis* doctrine, noting that "[a]t most, plaintiff speculates that she tripped over broken pavement in a pothole without presenting evidence that this was the case."

¶ 23    On December 26, 2016, pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), the trial court found that there was no just reason for delaying either enforcement or appeal of the November 17, 2016, order granting summary judgment to defendants. Plaintiff filed a notice of appeal, and this appeal follows.

¶ 24                                    ANALYSIS

¶ 25    On appeal, plaintiff argues that the trial court erred in granting summary judgment in defendants' favor because there was a genuine issue of material fact as to whether defendants

---

[7]We note that the judge that entered these two discovery orders was not the judge that presided over the motion for summary judgment.

breached a duty to plaintiff to keep the parking lot safe. A trial court is permitted to grant summary judgment only "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). The trial court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a trial court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 26 "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp.*, 154 Ill. 2d at 102. However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas*, 374 Ill. App. 3d at 624 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)). We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 27 "To succeed in an action for negligence, the plaintiff must establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to the plaintiff." *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22. "The existence of a duty under a particular set of circumstances is a question of law for the court to decide." *Choate*, 2012 IL 112948, ¶ 22. In determining whether a duty exists, we consider "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18.

¶ 28 "The duty of an owner or occupier of any premises toward invitees is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them, and he must maintain the premises in a reasonably safe condition." *St. Martin v. First Hospitality Group, Inc.*, 2014 IL App (2d) 130505, ¶ 11 (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 141 (1990)); see also *Choate*, 2012 IL 112948, ¶ 24 ("an owner or occupier of land *** owes a duty of reasonable care under the circumstances to all entrants upon the premises except to trespassers"). In the case at bar, defendants do not claim a lack of duty to keep the parking lot in a reasonably safe condition. Instead, defendants claim that the pothole that led to plaintiff's injury was a *de minimis* defect and their duty of care did not extend to repairing such a defect.

¶ 29 "If a defect is such that a reasonably prudent person would not anticipate some danger to persons walking upon it, it is considered *de minimis* and is not actionable." *Morris v.*

*Ingersoll Cutting Tool Co.*, 2013 IL App (2d) 120760, ¶ 12. As the Second District has explained, the "*de minimis* rule" originated in cases involving municipalities, "where it was noted that '[m]unicipalities do not have a duty to keep all sidewalks in perfect condition at all times.' " *St. Martin*, 2014 IL App (2d) 130505, ¶ 13 (quoting *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 457 (1994)). "Thus, although a municipality has a duty to keep its property in a reasonably safe condition, it has no duty to repair *de minimis* defects in its sidewalks." *St. Martin*, 2014 IL App (2d) 130505, ¶ 13. "This rule stems largely from the recognition that placing such a duty on a municipality would create an intolerable economic burden. [Citations.] Quite simply, a municipality does not have a duty to keep a sidewalk in perfect condition at all times." *Putman v. Village of Bensenville*, 337 Ill. App. 3d 197, 202 (2003). This rule has subsequently been extended to apply to private owners and possessors of land in addition to municipalities. See, *e.g.*, *St. Martin*, 2014 IL App (2d) 130505, ¶ 13; *Morris*, 2013 IL App (2d) 120760, ¶ 12; *Hartung v. Maple Investment & Development Corp.*, 243 Ill. App. 3d 811, 815 (1993).

¶ 30    Our supreme court has noted that "[w]hile courts are in marked disagreements as to when the sidewalk irregularity or defect is so slight that the question is one of law, and where it is one of fact for the jury, nevertheless, the decisions recognize that no mathematical standard can be adopted in fixing the line of demarcation, and that each case must be determined upon its own particular facts and circumstances." *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 604 (1957). Despite this admonition, however, Illinois courts have found that "liability generally attaches for sidewalk defects approaching two inches in height." *Morris*, 2013 IL App (2d) 120760, ¶ 13 (citing *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 121 (1993)). "The *de minimis* rule generally precludes negligence claims on lesser defects, absent aggravating circumstances." *Morris*, 2013 IL App (2d) 120760, ¶ 13.

¶ 31    In the case at bar, defendants argue, and the trial court found, that Nofal's affidavit established the depth of the pothole as half an inch and that there were no aggravating circumstances preventing the application of the *de minimis* rule, thereby entitling defendants to summary judgment. However, we cannot agree with this conclusion.

¶ 32    As an initial matter, defendants repeatedly refer to Nofal's affidavit, which contained his estimate that the depth of the pothole was half an inch, as "uncontradicted"; the trial court also found that "[i]t is undisputed that the depth of the defect located in [the] parking lot was less than 0.5 inch." "When facts are established by affidavit and are uncontradicted by opposing affidavit, those facts are taken as true and are admitted for the purpose of summary judgment." *Harris v. Village of Fithian*, 48 Ill. App. 3d 1019, 1021 (1977). However, our examination of the record shows that Nofal's estimate of the depth of the pothole as half an inch was not "uncontradicted" or "undisputed." Plaintiff attached her own affidavit to her response to defendant's motion for summary judgment, in which she averred that "[t]he subject pothole had a height difference that was large enough for [her] two-inch heel to get wedged in between." Thus, while plaintiff did not provide an exact measurement of the depth of the pothole—which would have been inappropriate, as she testified in her deposition that she did not know the pothole's exact depth—plaintiff did challenge Nofal's half-inch estimate. We also note that Nofal's affidavit does not explain how he determined the depth of the pothole; his affidavit was dated three years after the incident, the parking lot had since been repaved, and he merely states his conclusion that the depression in the parking lot "did not have a height difference of greater than 0.5 inches between the depression and

surrounding area in the parking lot on or around October 28, 2013." Affidavits in summary judgment proceedings "must consist of facts admissible in evidence as opposed to conclusions." *Woolums v. Huss*, 323 Ill. App. 3d 628, 636 (2001); see Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013). The affidavit had no basis under the law and should not have been considered. See *Hudson v. City of Chicago*, 378 Ill. App. 3d 373, 400 (2007) ("An expert's opinion is only as valid as the reasons for the opinion."). Accordingly, we do not take Nofal's half-inch estimate as an official measure of the depth of the pothole. It is, however, clear that the height difference was less than two inches, as plaintiff does not claim that the pothole was deeper than the two-inch heel of her shoe. Thus, we may safely say that the depth of the pothole was somewhere between half an inch and two inches, which would still fall within the purview of the *de minimis* rule, absent any aggravating circumstances.

¶ 33    However, examining the circumstances of the present case, we cannot say that the defect was so minor as to be considered *de minimis* as a matter of law. First, it is important to understand plaintiff's allegations as to the actual cause of her fall. Plaintiff does not argue that the height difference between the interior of the pothole and the surface of the parking lot caused her to trip and fall, and does not appear to have ever made such an argument, despite defendants' focus on the issue of the depth of the pothole. Instead, plaintiff argues that she stepped in the pothole and her shoe became stuck in either broken pavement or broken asphalt within the pothole, which caused her to jolt forward and fall. This version of events appears in both plaintiff's deposition testimony and in her affidavit filed in response to the motion for summary judgment.[8] Thus, plaintiff's fall is dissimilar to the cases in which the *de minimis* rule has been applied, which almost uniformly involve the plaintiff tripping as a result of a height deviation. Since this is not that type of situation, those cases are of limited usefulness. Defendants have cited no cases applying the *de minimis* rule to a situation in which the defect in the pavement has left exposed loose debris such that an individual's shoe could become embedded in the debris and cause him to her to fall. The closest such case we have discovered in our research is *West v. City of Hoopeston*, 146 Ill. App. 3d 538, 541 (1986), in which the trial court properly denied a directed verdict in a case involving a quarter-inch height difference in two sidewalk slabs where the area was "broken, probably from weathering and age" and the space between the slabs contained "a lot of loose, pebble-like particles lying inside the gap between the slabs." There, the appellate court found that "the defect in level was slight; however, the broken area between the slabs was sufficiently wide that a reasonable man could anticipate danger to persons walking upon it." *West*, 146 Ill. App. 3d at 543.

¶ 34    Furthermore, despite defendants' arguments to the contrary, we find the surrounding circumstances to be relevant to the determination of whether the defect was *de minimis*. In *Arvidson*, the case that first set forth the *de minimis* rule, our supreme court considered the circumstances surrounding the plaintiff's fall, such as the fact that the defective sidewalk was near the curb of a business street, near stores and parking meters, so that it was reasonably foreseeable that the area would be traversed by pedestrians. *Arvidson*, 11 Ill. 2d at 609. The supreme court also considered the particular way that the plaintiff's injury occurred, in that she stepped with her heel on the higher slab and her sole on the lower slab, and determined

---

[8]Plaintiff is not as specific in her complaint, alleging that she "stepped in a pot hole and fell." However, these allegations are not inconsistent with the more specific claims she later made.

that this was also reasonably foreseeable. *Arvidson*, 11 Ill. 2d at 609. Similarly, the supreme court in *Warner v. City of Chicago*, 72 Ill. 2d 100, 104 (1978), cautioned that the determination of whether defects were minor was a factual inquiry specific to each case, noting that "[a]n unacceptable height variation in one location, such as a busy commercial area where pedestrians must be constantly alert to avoid bumping into one another, may be nonactionable in another area, such as a residential one."

¶ 35    In the case at bar, plaintiff's injury occurred at night, in an area with dim lighting, on asphalt and not on a concrete sidewalk. The asphalt parking lot had a comparatively large area of depression and, although the depth was between half an inch and two inches, the depressed area contained broken pieces of asphalt within the depression. As noted, it was dark with a dim light, and we have found such lighting conditions alone to be sufficient to withstand a motion for summary judgment in the past. See *Alqadhi v. Standard Parking, Inc.*, 405 Ill. App. 3d 14, 19 (2010). Furthermore, the pothole as depicted in the photographs is not small, appearing to be up to several feet long and wide, and is located in an area of the parking lot in which there are no designated parking spaces, making it more likely for a pedestrian to encounter it, especially when walking across a crowded parking lot. "[T]he width and depth of the allegedly defective area should be considered in determining whether that area is of a minor, nonactionable nature." *West*, 146 Ill. App. 3d at 542. If, as plaintiff alleges, the pothole contained broken asphalt or pavement such that a shoe could become lodged inside the pothole, such a circumstance would be relevant to the determination of whether the defect was actionable. See *West*, 146 Ill. App. 3d at 543 ("A broken, cracked sidewalk may be defective."). Defendants point to *Morris*, in which the Second District found a defect in a loading bay to be *de minimis* where the alleged defect comprised less than 4% of the length of the loading bay. However, the Second District expressly noted that its mathematical calculations "should not be viewed as an attempt to formulate a bright-line rule." *Morris*, 2013 IL App (2d) 120760, ¶ 22 n.2. Instead, the calculation was "for the purpose of concretizing an abstract discussion and providing a readily comprehensible illustration." *Morris*, 2013 IL App (2d) 120760, ¶ 22 n.2. Moreover, the area of the defect was merely one factor in the court's reasoning. By contrast, in the case at bar, the other circumstances suggest that the defect in the instant case presents a question of fact as to whether defendants owed plaintiff and other parking lot users a duty to repair it.

¶ 36    We are similarly unpersuaded by defendants' suggestion that plaintiff should have used the sidewalk. First, we are not asked to determine what plaintiff should or should not have done at this stage of the proceedings—the purpose of summary judgment " 'is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager*, 328 Ill. App. 3d at 708 (quoting *Luu*, 323 Ill. App. 3d at 952). Additionally, the Google Maps image of the lot shows that there are no sidewalks running alongside the length of the parking lot and leading to the Red Pepper Lounge or Whale Fish. Indeed, when plaintiff testified in her deposition that she used the sidewalk to walk along the street, around Whale Fish, and back to the Red Pepper Lounge, this testimony led to additional questioning as to why she took such an out-of-the-way route, with her counsel remarking that "[i]t seemed weird to me." The question to be asked in determining whether a duty exists is whether it was reasonably foreseeable that such an injury would occur. See *Simpkins*, 2012 IL 110662, ¶ 18 (in determining whether a duty exists, a court should consider "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding

- 10 -

against the injury, and (4) the consequences of placing that burden on the defendant"). Here, we cannot say, as a matter of law, that it was not reasonably foreseeable that an individual parking his or her vehicle in the parking lot would choose to walk across the lot instead of using an out-of-the-way sidewalk.

¶ 37 Under the *de minimis* rule, a jury question on the issue of negligence "is presented only when the defect in the sidewalk is such that a reasonably prudent man should anticipate some danger to persons walking upon it." *Arvidson*, 11 Ill. 2d at 605. In the case at bar, under the circumstances presented in the instant case and taking the facts in the light most favorable to plaintiff as the nonmovant, we cannot say that the defect present in defendants' parking lot was *de minimis* as a matter of law. Instead, there is a question of fact concerning the size and depth of the pothole itself, as well as to whether defendants owed a duty to plaintiff and other users of the parking lot to repair the pothole. Accordingly, summary judgment should not have been granted.

¶ 38 Since we have determined that the trial court erred in granting the motion for summary judgment, we have no need to determine whether the trial court erred in denying plaintiff leave to depose Nofal prior to responding to the motion for summary judgment.

¶ 39 CONCLUSION

¶ 40 For the reasons set forth above, we cannot say that the pothole located on defendants' parking lot represented a *de minimis* defect such that it is not actionable as a matter of law. Accordingly, summary judgment should not have been granted in defendants' favor.

¶ 41 Reversed.