KATHERINE WEST, Plaintiff-Appellee, v. THE CITY OF HOOPESTON, Defendant-Appellant.

Fourth District   No. 4—86—0111

Opinion filed August 28, 1986.—Rehearing denied September 26, 1986.

Judge & Knight, Ltd., of Park Ridge (Jay S. Judge and Kristine A. Karlin, of counsel), for appellant.

Manion, Janov, Edgar, Devens & Fahey, Ltd., of Danville (Rick E. Janov, of counsel), for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

On May 18, 1984, plaintiff fell on a public sidewalk along Main Street in Hoopeston. She broke her left elbow, lost much of the grip

in her left hand, and as a result lost full mobility of her left elbow and arm. Plaintiff was left-handed. On January 24, 1985, she filed suit alleging defendant, the city of Hoopeston, negligently allowed the sidewalk to become broken, uneven, and cracked, and failed to maintain the sidewalk in a reasonably safe condition for pedestrian traffic. Plaintiff alleged that she tripped on an uneven and cracked portion of the sidewalk. Defendant answered the complaint denying any negligence. It alleged as a further defense that plaintiff contributed to her own injuries. Therefore, any damages should be reduced.

A jury returned a verdict in plaintiff's favor awarding her $58,500 in damages and finding that she was not negligent. No issues are raised as to the measure of damages or as to the defendant's notice of the alleged defect in the sidewalk.

Defendant raises two issues on appeal. First, it argues that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict. Defendant maintains the height variance where plaintiff fell was minimal thus, nonactionable as a matter of law. It was, therefore, not negligent because reasonable men could not foresee any danger to the public from the condition of the sidewalk. Second, defendant argues that the trial court abused its discretion in denying its motion for new trial because the jury's finding on plaintiff's negligence was against the manifest weight of the evidence.

We affirm.

Dani Means testified that between 2 and 2:30 p.m. on May 18, 1984, while he was working at the Hoopeston car wash, he saw plaintiff trip and fall on the sidewalk. The sidewalk where she fell was broken, with small, chipped rocks in it, and many cracks. Means stated that plaintiff fell in the area where a large crack extends across the sidewalk. On cross-examination, he admitted, however, that he had during a deposition marked a photograph in the general area where plaintiff fell. The "X" on the photograph was behind the crack extending across the sidewalk. The photograph he marked was a smaller ' photograph than the one used at trial.

Means further stated that the sidewalk had existed in that condition for quite a while. Approximately 50 people use the sidewalk on a daily basis in the summer. There are a school and several businesses along Main Street near the car wash. The car wash is three to four blocks from the downtown area. Many of the customers and employees of businesses in the area drive automobiles.

David Hanna, a surveyor, made a scale drawing of the sidewalk and measured it. Hanna stated the sidewalk was concrete and asphalt,

approximately 20 to 30 years old, and uneven in places. He measured the area where plaintiff fell. The elevation between the slabs of the sidewalk varied from nine-sixteenth of an inch to one-fourth of an inch. Normally, the elevation between slabs is the same. The horizontal width between the slabs was 2 inches. The area where plaintiff fell was approximately one-fourth of an inch higher in elevation. This area was broken, probably from weathering and age. The normal width between slabs is one-fourth of an inch. He found a lot of loose, pebble-like particles lying inside the gap between the slabs. Some of the pebbles could be worked loose with a tool but would also come loose by hand pressure.

Plaintiff testified that she had walked past the entrance to the car wash when she heard a car. She turned to look and fell. When she got up, she saw that she had stumbled on the raised portion of the sidewalk. She indicated on a photograph the area in which she fell. Plaintiff felt her toe strike something hard before she fell. She had used the sidewalk on a daily basis before this incident and was walking in her usual manner.

Plaintiff further testified that the sidewalk is frequently used by pedestrians. In this area it is the only sidewalk. The sidewalk had been in a similar condition for 5 to 10 years. Plaintiff had reported its condition to the mayor three or four years before the incident.

On cross-examination, plaintiff testified that she always watched where she was going and was familiar with the condition of the sidewalk.

Robert Frank, an employee of the streets and alley department, testified that 15 to 25 people use the sidewalk on a daily basis. Henry Anderson, the streets commissioner, testified that 20 to 30 people use the sidewalk on a daily basis. Anderson measured the difference in elevation between the concrete slabs where plaintiff fell. There was a one-fourth inch difference in elevation. His testimony supported Means' testimony about the vehicular traffic in the area.

■ Verdicts should be directed and judgments notwithstanding the verdict entered only in those cases in which all of the evidence when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. (*Darnall v. Impact Industries, Inc.* (1984), 105 Ill. 2d 158, 162, 473 N.E.2d 935, 937; *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14; *Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 403, 487 N.E.2d 798, 803; *Szarat v. City of Chicago* (1983), 117 Ill. App. 3d 809, 454 N.E.2d 68.) Under common law principles, a city is required

to maintain its streets and sidewalks in a reasonably safe condition for the amount and kind of travel which may fairly be expected upon them. (*Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 84, 491 N.E.2d 165, 166.) However, it has been long established that a municipality need not keep its streets and sidewalks in perfect condition. *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 145 N.E.2d 105.

Slight inequalities in level or other minor defects are not actionable. (*Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 104, 378 N.E.2d 502, 503; *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 145 N.E.2d 105.) A diversity of opinion exists as to which defects are minor. In *Arvidson*, the court noted that each case must be examined on its own facts and no mathematical standard could be adopted which would fix the line of demarcation between minimal and actionable. (11 Ill. 2d 601, 604, 145 N.E.2d 105, 106.) In *Warner*, the court noted that each case must be determined upon its own facts, citing *Arvidson*. However, the court also noted that under the circumstances before it a 1 ⅛-inch defect in level would not be actionable because of its minimal nature. *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 104, 378 N.E.2d 502, 504.

■ Defendant argues that *Warner* sets forth a bright-line test. However, the court in *Warner* adopted a position that under the circumstances before it, a 1 ⅛-inch defect in level was such a defect that a reasonably prudent man would not anticipate danger to persons walking upon it. In Illinois, a jury question on the issue of a city's negligence is presented only when the defect is such that a reasonably prudent man should anticipate some danger to persons walking upon or over the defective area. *Warner v. City of Chicago* (1986), 72 Ill. 2d 100, 378 N.E.2d 502; *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 245 N.E.2d 105; *Hess v. City of Chicago* (1981), 101 Ill. App. 3d 426, 428 N.E.2d 581; *Repinski v. Jubilee Oil Co.* (1980), 85 Ill. App. 3d 15, 405 N.E.2d 1383; *Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 394 N.E.2d 33.

■ Defendant maintains that since the defect in level in the instant case was at maximum only nine-sixteenth of an inch and where plaintiff fell only one-fourth of an inch, it is not actionable as a matter of law. Therefore, the city was not negligent in maintaining its sidewalks. Plaintiff argues the other dimensions of the defect must be considered by this court. Therefore, she maintains the broken area was 2 inches wide and one-fourth to nine-sixteenth of an inch in height. We agree that the width and depth of the allegedly defective area should be considered in determining whether that area is of a minor, nonactionable nature. (See generally *Arvidson v. City of Elm-*

*hurst* (1957), 11 Ill. 2d 601, 245 N.E.2d 105; *White v. City of Belleville* (1936), 364 Ill. 577, 5 N.E.2d 215.) A broken, cracked sidewalk may be defective. *Franklin v. City of Edwardsville* (1955), 4 Ill. App. 2d 495, 124 N.E. 2d 357.

■ In the instant case, the defect in level was slight; however, the broken area between the slabs was sufficiently wide that a reasonable man could anticipate danger to persons walking upon it. Viewed in a light most favorable to plaintiff, the evidence does not so overwhelmingly favor a finding in defendant's favor such that no other verdict could stand. The trial court properly denied defendant's motions for directed verdict and judgment notwithstanding the verdict.

■ Defendant next argues the court abused its discretion in denying defendant's motion for a new trial on plaintiff's negligence. On a motion for new trial, a court will weigh the evidence, set aside the verdict, and order a new trial if the verdict is contrary to the manifest weight of the evidence. (*Birch v. Township of Drummer* (1985), 139 Ill. App. 3d 397, 487 N.E.2d 798.) Principles of comparative negligence in setting the amount of damages apply to falls on city sidewalks. (See generally *Szarat v. City of Chicago* (1983), 117 Ill. App. 3d 809, 454 N.E.2d 68.) The verdict should be set aside if it is contrary to the manifest weight of the evidence. However, a verdict is not contrary to the manifest weight of the evidence when it hinges upon inferences which may have been drawn from the evidence.

■ ■ A pedestrian is required to use ordinary care for his own safety. However, he is not required to "keep his eyes glued to a sidewalk" in search of defects. (*Shepard v. City of Aurora* (1955), 5 Ill. App. 2d 12, 19, 124 N.E.2d 584, 586.) Use of a defective sidewalk is not negligence *per se*. It is merely a factor which a jury should consider in determining whether the pedestrian used ordinary care. We believe a jury could reasonably have decided that plaintiff's action in trying to determine the location of the car which she heard was not negligent under the circumstances presented here. See generally *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581.

For the above reasons we affirm the trial court.

Affirmed.

WEBBER and MORTHLAND, JJ., concur.