# Illinois Official Reports

## Appellate Court

---

### *St. Martin v. First Hospitality Group, Inc.*, 2014 IL App (2d) 130505

---

| | |
|---|---|
| Appellate Court Caption | CHARLES L. ST. MARTIN, Plaintiff-Appellant, v. FIRST HOSPITALITY GROUP, INC., d/b/a Hilton Chicago/Indian Lake Resort, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-13-0505 |
| Filed | May 1, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when he tripped on a defect in a sidewalk at the entrance to defendant's hotel, the trial court properly entered summary judgment for the hotel based on the *de minimi*s rule, under which there is no duty to repair *de minimis* defects in sidewalks, notwithstanding defendant's contention that the rule should not be applied because the defect was near the hotel's door and that there were questions of fact about other aggravating factors. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 11-L-632; the Hon. Patrick J. Leston, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas J. Manzella and William J. Rock, both of Block, Klukas & Manzella, P.C., of Joliet, for appellant.<br><br>Melissa A. Murphy-Petros and William S. Cook, both of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, of Chicago, for appellee. |

JUSTICE HUDSON delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1      Plaintiff, Charles L. St. Martin, appeals the trial court's summary judgment for defendant, First Hospitality Group, Inc. Plaintiff alleged that he was injured when he tripped and fell on an uneven portion of sidewalk outside of a hotel owned by defendant. The trial court determined that defendant did not owe plaintiff a duty of care, because the defect was *de minimis*. We affirm.

¶ 2                        I. BACKGROUND

¶ 3      On January 19, 2011, plaintiff filed a complaint seeking damages for injuries he sustained when he fell outside of the entryway to defendant's hotel. Plaintiff alleged that, on May 10, 2010, he tripped over an uneven surface as he approached the hotel's entryway at approximately 9 p.m. He alleged that the area had poor lighting, but he did not make any other allegations about the nature of the area or how much foot traffic was present.

¶ 4      At his deposition, plaintiff testified that, on the day of the fall, he was attending a seminar at the hotel. He went outside to smoke a cigarette at some benches 10 to 12 feet from the hotel, where there was also an ashtray. When he returned, he tripped over uneven slabs of concrete a couple of feet away from one of the doors at the main entrance to the hotel. Photos in the record show that it was essentially just outside of the doors, right before the entryway rug, and under a roof that extended over a drive-up area at the front of the hotel. One person who was in a nearby van saw plaintiff fall and assisted him. Plaintiff injured his knee in the fall. Plaintiff stated that the lighting was brighter as he got nearer to the entryway, because the lights were "up in the ceiling of that thing," and he did not think that he fell because of problems with the lighting. Plaintiff's brother later measured the height difference between the concrete slabs at between 1½ and 1¾ inches.

¶ 5      Defendant provided an exhibit of photos, purportedly taken by the hotel's manager the day after the fall, that show the difference at around a half-inch. The record contains photocopies of the photos, in which it is difficult to read the ruler or see whether the ruler is held at an angle. An expert retained by defendant observed the area on October 24, 2012, and measured the height difference at under an inch. The expert averred that the sidewalk would heave and move during normal winter conditions and that the varying alignments of the concrete slabs were typical, commonplace, and expected. He opined that the area was not in need of repair or replacement and that it did not present a hazardous condition. He did not address the condition of the area on May 10, 2010.

¶ 6      Defendant moved for summary judgment, arguing that it did not owe plaintiff a duty of care, because the defect in the sidewalk was *de minimis*. Plaintiff argued that the *de minimis*

rule was inapplicable because of how near the defect was to the front doors and that there were issues of fact as to whether aggravating circumstances existed. The trial court granted the motion for summary judgment, finding that the defect was *de minimis* as a matter of law and further noting that the affidavit of defendant's expert was unrebutted. Plaintiff appeals.

¶ 7                                              II. ANALYSIS

¶ 8        Plaintiff contends that the *de minimis* rule does not apply, because the defect was near the front doors of the hotel. He further contends that there are issues of fact about the height of the defect.

¶ 9        Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). In determining whether a genuine issue of material fact exists, a court must construe the materials of record strictly against the movant and liberally in favor of the nonmoving party. See *Perri v. Furama Restaurant, Inc.*, 335 Ill. App. 3d 825, 829 (2002). "If fair-minded persons could draw different inferences from the undisputed facts, the issues should be submitted to a jury to determine what inference seems most reasonable." *Menough v. Woodfield Gardens*, 296 Ill. App. 3d 244, 245-46 (1998). We review *de novo* the entry of summary judgment. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 10       To prevail in a negligence action, the plaintiff must prove that the defendant owed a duty, that the defendant breached that duty, and that the plaintiff's injury proximately resulted from that breach. *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 745-46 (2005). The existence of a duty generally is a question of law and, therefore, may be resolved on a motion for summary judgment. *Ralls v. Village of Glendale Heights*, 233 Ill. App. 3d 147, 154 (1992).

¶ 11       An owner or occupier of land is not an absolute insurer of the safety of an invitee. See *Hutter v. Badalamenti*, 47 Ill. App. 3d 561, 563 (1977). The duty of an owner or occupier of any premises toward invitees is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them, and he must maintain the premises in a reasonably safe condition. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 141 (1990).

¶ 12       The primary factors that a court considers in determining the existence of a duty include: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 436-37 (2006).

¶ 13       The *de minimis* rule originated in cases involving municipalities, where it was noted that "[m]unicipalities do not have a duty to keep all sidewalks in perfect condition at all times." *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 457 (1994). Thus, although a municipality has a duty to keep its property in a reasonably safe condition, it has no duty to repair *de minimis* defects in its sidewalks. *Putman v. Village of Bensenville*, 337 Ill. App. 3d 197, 202 (2003); *Hartung v. Maple Investment & Development Corp.*, 243 Ill. App. 3d 811, 814 (1993). The *de minimis* rule stems in large part from the recognition that municipalities would suffer an unreasonable economic burden were they required to keep their sidewalks in perfect condition all the time. *Putman*, 337 Ill. App. 3d at 202. "It is common knowledge that sidewalks are constructed in slabs for the very reason that they must be allowed to expand and contract with

changes in temperature." *Hartung*, 243 Ill. App. 3d at 816. In *Hartung*, we extended the *de minimis* rule to apply to private owners and possessors of land. *Id*. at 815.

¶ 14    Whether a height variance between two sidewalk slabs is *de minimis* depends on all of the pertinent facts, and there is no simple standard to separate *de minimis* defects from actionable ones. *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601, 604 (1957); *Hartung*, 243 Ill. App. 3d at 814; *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 122 (1993). However, it is well established that, absent any aggravating factors, a vertical displacement of less than two inches is *de minimis*. Thus, the supreme court has held that, although a displacement of 2 inches in a residential area is actionable, a variation of only 1⅛ inches, absent more, is *de minimis*. *Warner v. City of Chicago*, 72 Ill. 2d 100, 104-05 (1978). In *Birck*, the appellate court held that a variance of 1⅞ inches was *de minimis*. *Birck*, 241 Ill. App. 3d at 121-22. Finally, in *Putman*, we held that a one-inch displacement was *de minimis*. *Putman*, 337 Ill. App. 3d at 202-03.

¶ 15    However, we held in *Hartung* that "the *de minimis* rule cannot be applied blindly to cover every situation. Its application may very well depend on other factors." *Hartung*, 243 Ill. App. 3d at 817. Thus, we have observed that, "[i]n a 'busy commercial district,' it is reasonable to infer that a pedestrian could be sufficiently distracted to overlook an otherwise *de minimis* defect." *Putman*, 337 Ill. App. 3d at 205 (quoting *Baker v. City of Granite City*, 75 Ill. App. 3d 157, 160 (1979)). Likewise, in *Repinski v. Jubilee Oil Co.*, 85 Ill. App. 3d 15, 20-21 (1980), the unreasonableness of a defect was a question for the jury when, among other things, there was evidence of commercial use of the area. See also *Baker*, 75 Ill. App. 3d at 160 (defect in a busy commercial district was actionable, but it might not have been actionable in a residential area). If there is evidence of an aggravating circumstance, whether the defendant owed a duty to the plaintiff is a question of fact. See generally *Repinski*, 85 Ill. App. 3d at 20-21. But if the plaintiff fails to provide evidence that such a circumstance exists, summary judgment is appropriate. See *Hartung*, 243 Ill. App. 3d at 817. Here, plaintiff contends that the location of the defect, outside the entry to a commercial establishment, was an aggravating circumstance precluding the entry of summary judgment.

¶ 16    In *Hartung*, the plaintiff tripped and fell on a raised portion of sidewalk near a store located in a shopping center. The raised portion of the sidewalk was between one-half and three-quarters of an inch, and the trial court granted summary judgment in favor of the defendant. Noting a lack of pleading or evidence that the area was congested with traffic, we applied the *de minimis* rule. *Id*. at 815. In doing so, we noted that it is a great burden to maintain perfect sidewalks and that to require landowners to monitor and maintain them perfectly at all times would be harsh and impractical. *Id*. at 817. Given the extreme and various weather conditions in Illinois, slight variations in sidewalk elevations are to be expected, and sidewalks cannot be perfectly maintained at all times. *Id*. at 816. We further noted that sidewalks are constructed in slabs for the very reason that they must be allowed to expand and contract with changes in temperature. *Id*. Also, imperfections in sidewalks can be avoided by pedestrians more easily than imperfections on stairs. *Id*. "Moreover, because indoor flooring is not exposed to the weather and can be more easily monitored for defects, courts have been more inclined to find smaller defects in flooring actionable. We believe that a minor defect such as the one in the present case is one that a person exercising ordinary care could have easily avoided. The defect is one which is routinely encountered in an ordinary sidewalk." *Id*. at 816-17.

¶ 17    *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894, 902 (2000), illustrates when an aggravating circumstance may prevent application of the *de minimis* rule. There, we declined to apply the *de minimis* rule when the plaintiff specifically alleged that the defendant, a bank, failed to provide a safe means of ingress and egress to the only entrance of its establishment. We noted that it was not unreasonable to presume that the plaintiff could be distracted by reviewing receipts, looking for car keys, or looking toward her car and that the economic burden of repairing the area would not be great. Thus, we did not apply the rule under the particular facts of the case. *Id.*

¶ 18    In *Bledsoe v. Dredge*, 288 Ill. App. 3d 1021, 1024 (1997), the Third District distinguished *Hartung* and declined to apply the *de minimis* rule to a fall outside of a partially enclosed entryway to a commercial building containing shops and businesses. There, the entry was described as a large covered corridor open on the end, with marble flooring. The court noted that the existence of shops and businesses could be expected to draw patrons to the entryway. Further, the area was partially enclosed and was not fully exposed to the weather. The court observed our statement in *Hartung* that indoor flooring that is not exposed to the weather can be more easily monitored for defects and does not impose an equivalent of the burden of monitoring an expanse of sidewalks. *Id.* Thus, the court declined to apply the *de minimis* rule and reversed a grant of summary judgment. One justice dissented, stating that he would apply the *de minimis* rule anytime a surface has been exposed to the elements. *Id.* at 1025 (Holdridge, J., dissenting).

¶ 19    Here, it is undisputed that the height variation between the concrete slabs was less than two inches. Such a defect generally is not actionable, because it is *de minimis*. Further, plaintiff has not specifically alleged or provided any evidence that an aggravating circumstance such as heavy foot traffic, distraction, or congestion existed. Instead, the question is whether the close proximity to the covered entryway of the commercial building was an aggravating circumstance that removes application of the *de minimis* rule.

¶ 20    We apply *Hartung* and find that the *de minimis* rule applies. As we held in *Hartung*, given the extreme and various weather conditions in Illinois, slight variations in sidewalk elevations are to be expected, and sidewalks cannot be perfectly maintained at all times. Here, while the area was partially covered, its sides were open, exposing it to the elements. Further, pedestrians can avoid imperfections in an outdoor walkway more easily than on indoor flooring. Requiring a landowner to constantly monitor and perfectly maintain outdoor walkways that are exposed to the elements would create an undue burden.

¶ 21    As in *Hartung*, we view the uneven portion of sidewalk as a minor defect that a person exercising ordinary care could easily avoid, as it is the type of imperfection that is routinely encountered on an ordinary sidewalk. *Hartung*, 243 Ill. App. 3d at 816-17. In this regard, we note that defendant provided an affidavit from an expert stating the opinion that the area was not in need of repair or replacement and that it did not present a hazardous condition. While that affidavit was based on observations made well after plaintiff's fall, it nevertheless was uncontroverted by plaintiff, who did not present any expert testimony at all.

¶ 22    We find *Bledsoe* and *Harris* distinguishable. In *Harris*, we were concerned with a specific pleading that the plaintiff failed to provide a safe means of ingress and egress to the sole entry when the plaintiff might also have been distracted. Here, plaintiff has not alleged that he lacked a choice of doors used to enter or exit the hotel and he has not alleged that he was distracted or that congestion or foot traffic was an aggravating circumstance. At most, he speculates that he

might have been looking for a key or that the door mat might have obscured the imperfection, without having presented evidence that this was actually the case. In *Bledsoe*, the Third District was faced with a location that was sheltered from the elements on three sides and that had a marble floor. That is far different from a covered drive-up entry that is still exposed to the elements and constructed of concrete. As we noted in *Hartung*, indoor flooring is distinguishable from concrete that is exposed to the elements. Thus, we apply *Hartung* and affirm.

¶ 23                                       III. CONCLUSION

¶ 24        The trial court properly applied the *de minimis* rule and granted defendant's motion for summary judgment. Accordingly, the judgment of the circuit court of Du Page County is affirmed.

¶ 25        Affirmed.