2020 IL App (2d) 190129-U
No. 2-19-0129
Order filed June 15, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| LYNN COLOVOS, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 07-L-1172 |
| | ) | |
| BOND DRUG COMPANY OF ILLINOIS, | ) | Honorable |
| | ) | Brian R. McKillip, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BIRKETT delivered the judgment of the court.
Justices Schostok and Brennan concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court improperly considered only the height differential and ignored the horizontal aspects of a sidewalk defect in determining the defect was *de minimis*. Because these aspects take the defect beyond the purview of the *de minimis* rule, we reverse the grant of summary judgment in favor of defendant and remand the cause.

¶ 2   Plaintiff, Lynn Colovos, appeals the judgment of the circuit court of Du Page County granting summary judgment in favor of defendant, Bond Drug Company of Illinois. Plaintiff alleged that a sidewalk defect outside of defendant's Walgreens store caused her October 27, 2015, fall and injury, and defendant moved for summary judgment, arguing that the defect was *de minimis*. On appeal, plaintiff argues that there were factual issues about whether the sidewalk

defect was actually *de minimis* that should have precluded summary judgment, the trial court

misapplied the *de minimis* rule as if the sidewalk defect described were solely a height differential,

aggravating circumstances such as the location of the defect and the lighting conditions should

have precluded the application of the *de minimis* rule, and the trial court misapprehended and

misapplied relevant authority that indicated that defendant was not entitled to judgment as a matter

of law.  We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      We summarize the facts appearing in the record on appeal.  Defendant owns and operates

a Walgreens drug store on the subject property located on Lake Street in the City of Addison, and

it owns, operates, and maintains the subject property, including the parking areas associated with

the Walgreens store.  Facing the store, the customer parking lot has at least six parking spaces

extending to the left from the entrance and perpendicular to the front of the store.  Between the

parking spaces and the storefront is a sidewalk consisting of apparently square slabs.  The sidewalk

is two slabs wide and extends along the front of the store until it reaches an alley.  Across the alley

is a continuation of the parking area where the employees park.  There is illumination provided

from lights affixed to the building.  The actual entrance area appears to provide much of the

illumination of the relevant parking area; there also appear to be other sources, but the level of

illumination appears to be brightest at the entrance of the store and appears to gradually decrease

from the parking spaces nearest to the store and traveling toward the alley.

¶ 5      Sometime between 6:30 and 7 p.m. on October 27, 2015, plaintiff arrived at the Walgreens

to do some light shopping.  Plaintiff had visited this Walgreens hundreds of times on her way home

from work.  Facing the entrance, plaintiff parked to the left in the sixth space.  Plaintiff testified

that she had never parked in that parking space and had never walked along that portion of the sidewalk. Plaintiff conceded that she had never experienced any difficulty entering or exiting the store and had never tripped on the sidewalk.

¶ 6    When plaintiff arrived, the sun had set and there was a light mist falling. Plaintiff parked, checked for something in the back seat, exited her car, and entered the store by walking along the sidewalk. Plaintiff testified that, as she entered the store, she walked along the half of the sidewalk closer to the parked cars. Plaintiff shopped for 10 or 15 minutes and exited the store carrying her purse and a bag in her left hand. On her return to her car, she walked along the half of the sidewalk nearer to the wall of the store but more in the center of that half. Plaintiff testified that she was walking to and focused on her car while reaching into her pocket with her right hand to locate her car keys when she fell.

¶ 7    Describing her fall, plaintiff testified: "All of a sudden, I [felt] my ankle turn like I stepped on something and I lost my balance and I couldn't right myself and I fell." Plaintiff testified that, the next day she investigated and observed that "a chunk of cement" was missing from the sidewalk. Aside from the missing cement from the sidewalk, plaintiff recalled there was nothing else on the sidewalk to cause her to fall; when she went back to the store the next day, plaintiff likewise did not observe anything on the sidewalk aside from the defect that "was in the way of me tripping over or stumbling over or catching my ankle or anything like that." Plaintiff also reported that before her fall, her boots had no scuffing and demonstrated only expected signs of wear; after she fell, plaintiff observed that the toe area of her left boot was scuffed.

¶ 8    A few days after her fall, plaintiff reported the fall to employees at the store; the manager on duty confirmed from the security footage that plaintiff had fallen at the time she claimed and

initiated reporting with the corporate authorities. Plaintiff eventually photographed the sidewalk defect and measured, as best she could, its dimensions. Both plaintiff's photos and measurements appear to have occurred some time after the fall, relatively close in time to the fall, but the precise dates are undisclosed in the record. Defendant's employer also photographed the defect and attempted to measure it. Defendant's photos were taken approximately 2 ½ years after plaintiff's fall. According to plaintiff, the defect measured up to four inches long and three inches wide; plaintiff testified that, because of the irregularity of the defect, she could not estimate its depth. Defendant's employee attempted to measure the depth with a ruler and estimated the depth of the defect to be about ½ to ¾ inch.

¶ 9    Plaintiff testified that, when she fell, she badly injured her left elbow. The injury required surgical repair and rehabilitation. As a result of the injury, plaintiff lost some flexibility and strength in her left arm and continues to experience pain in her left arm upon exertion or placing weight on it, such as while working at a computer.

¶ 10    On October 23, 2017, plaintiff filed her complaint against "Walgreens Company," alleging negligence in maintaining and lighting the sidewalk adjacent to the store for its patrons' reasonably safe use. On January 22, 2018, plaintiff filed her first amended complaint, this time against defendant. On the same date, Walgreens Company was dismissed on plaintiff's motion.[1] Written

_____

[1] Neither the motion to dismiss nor the motion for leave to file plaintiff's first amended complaint appear in the record; however, a January 2, 2018, notice of motion refers to a "notice of motion with motion for leave to file first amended complaint," and the January 22, 2018, order references both the motion for leave and the motion to dismiss.

and oral discovery was completed in due course and, on July 30, 2018, defendant filed its motion for summary judgment arguing that the sidewalk defect was *de minimis* and that plaintiff's allegations of insufficient lighting did not preclude summary judgment. Following a September 24, 2018, hearing, the trial court, on November 19, 2018, issued its letter of judgment.

¶ 11    We reproduce the trial court's letter of judgment in pertinent part:

"Plaintiff's complaint alleges that while leaving a Walgreens drugstore owned and operated by the defendant, she tripped and fell due to a defect in the sidewalk. The plaintiff had exited the Walgreens store and walked along a sidewalk adjacent to the exterior of the building. It is the defendant's position that the condition of the sidewalk which the plaintiff claims to have caused her fall and resulting injury was so small as to be *de minimis*. Because the condition was *de minimis*, the defendant argues that it had no duty to the plaintiff with respect to the condition, and that included no duty to illuminate the condition.

Attached to the motion were photographs depicting the condition of the sidewalk which the plaintiff alleges caused her fall. Specifically[,] Exhibit C to the motion is a view from above of the alleged defect. There are other photo exhibits attached to both the plaintiff's motion as well as the response which also depict the alleged defect and measurements.

During the course of her deposition, the plaintiff identified Exhibit C as truly and accurately depicting the condition of the sidewalk at the time of her fall. Exhibit C depicts a defect which can be described as a piece of missing concrete of irregular shape and irregular depth. It is adjacent to a 'crease' of the sidewalk. The measurements seem to indicate it is no more than 4 ½ inches at its greatest length and 2 ½ [to] 3 inches at its

greatest width. The plaintiff estimated the depth of the defect to be approximately ½ inch at its greatest. Its greatest depth is at the crease and it tapers to the edges of the missing area until [it] feathers to the normal surface of the sidewalk.

The plaintiff has consistently described the condition as a 'chunk' of concrete while the defendants [*sic*] have described it as a 'chip.' The defendant notes that there is no mathematical formula or bright line rule for determining what would constitute a *de minimis* condition which would excuse the defendant from a duty. The defendant cites a number of cases in which a displacement of 1 ½ to 1 ¾ inches must exist in order to warrant any analysis. Many of those cases concern a difference in height between two slabs of sidewalk. However one might describe the condition — a chunk or chip — I must conclude that it must be considered *de minimis* for which, in the absence of aggravating factors, the defendant was not under any duty to warn the plaintiff.

The plaintiff argues that there are aggravating factors which preclude the application of the *de minimis* rule and, therefore, prevent summary judgment. One of the aggravating factors which the plaintiff advances is the claim of inadequate lighting. However, it is clear that the issue of illumination of a *de minimis* defect is not a factor to be considered. In *Putman v. Village of Bensenville*, 337 Ill. App. 3d 197 (2nd Dist. 2003), the plaintiff had tripped because of a 1[-]inch lip between a ramp and curb in the pedestrian crosswalk. At the time of the incident, the overhead lighting at the intersection was not working. The trial court's entry of summary judgment was affirmed by the Second District, noting that the defect was *de minimis* and that illumination was irrelevant. '[T]here is no duty to illuminate a defect that is not otherwise actionable. (Citation omitted.)' *Id.* at 205.

While the court spoke in terms of a municipality, it is equally applicable to private landowners. Making the lack of illumination an aggravating factor precluding application of the *de minimis* rule, [*sic*] would require the illumination of every *de minimis* condition, allowing the exception to swallow the rule.

Citing *Martinkovic v. City of Aurora*, 150 Ill. App. 3d 589 (2nd Dist. 1986), the plaintiff also argues that the defendant voluntarily undertook a duty to insure [*sic*] that the exterior area of its store was 'well illuminated.' Paragraph 4 of its 'Best Practices to share with store team members' provides 'Keep Parking Lot well illuminated.' In *Martinkovic*, the appellate court noted the City's 'express policy of repairing all defects exceeding one inch in length or depth.' *Id.* at 594.

However, I believe that *Martinkovic* is distinguishable from cases such as *Wade v. City of Chicago*, 360 Ill. App. 3d 773 (1st Dist. 2006), and similar cases that have held that self-imposed rules or internal guidelines do not necessarily create a legal duty. In *Martinkovic*, the City had established an objective standard for maintenance of its sidewalks, *i.e.*, a defect of more than 1 inch. The duty which the plaintiff seeks to impose upon the defendant is this case is subjective — well illuminated.

The defendant also cites the [*sic*] *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894 (2nd Dist. 2000). In *Harris*, the court distinguished a one[-]inch defect from prior cases which had held that such a defect would be considered *de minimis*. *Harris* found that by reason of its location, whether or not the defect at issue was *de minimis* became a jury question. The *Harris* court's analysis focused on the likelihood of a patron being distracted while exiting the defendant bank, which would increase the likelihood of injury. It also

noted that there was minimal economic burden to repair a defect in two slabs of concrete and that the amount of sidewalk to monitor and maintain was small. In the instant case, the plaintiff's deposition discloses no such distractions. Moreover, the plaintiff was well away from the actual entrance to the store.

The holding in *Harris* cannot be extended to the entire area surrounding the store on the theory that it is part of the entrance. The thrust of the *Harris* holding is directed at likely distractions at or near the entrance/exit. I do not believe that the holding in *Harris* can be applied to the facts presented by the instant case.

The plaintiff has not established aggravating factors sufficient to raise a material issue of fact such that a jury would be required to determine whether or not the condition existing in this case is subject to the *de minimis* rule absolving the defendant from a duty. The condition is *de minimis* and there are no factors which so aggravate the circumstances as to warrant a denial of the motion for summary judgment.

For the foregoing reasons, defendant's motion is granted and judgment will be entered in favor [of] the defendant."

¶ 12    On November 28, 2018, the trial court formally entered summary judgment in favor of defendant. On December 17, 2018, plaintiff timely filed her motion to reconsider. On January 23, 2019, the trial court heard argument on the motion to reconsider and denied the motion. Plaintiff timely appeals.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, plaintiff argues that the trial court erred in granting summary judgment in favor of defendant. At root, plaintiff contends that that the court's application of the *de minimis* rule

was improper both legally and factually. Specifically, plaintiff purports to raise five issues on appeal, but they are all variations on the theme. First, plaintiff contends that the question of whether the sidewalk defect was *de minimis* was properly a question for the ultimate finder of fact and the factual issues should have precluded the entry of summary judgment. Next, plaintiff argues that the trial court rotely applied the two-inch rule of the *de minimis* rule to an inappropriate situation involving something more akin to a small pothole in the sidewalk. Similarly, in the third and fifth issues, plaintiff contends that the trial court ignored the factual issues and misapprehended the legal rules applicable to the aggravating circumstances of the lighting and location of the sidewalk defect. In the fourth issue, plaintiff argues that *Harris* should have governed the outcome here. We begin with the standard of review.

¶ 15                      A. Standard of Review

¶ 16    Plaintiff argues that the trial court erred in granting summary judgment in favor of defendant. Summary judgment should not be granted unless the pleadings, depositions, admissions, and affidavits, show that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018). A genuine issue of material fact exists where the material facts are in dispute, or, if the material facts are undisputed, reasonable persons could draw differing inferences from the undisputed facts. *Cook v. Village of Oak Park*, 2019 IL App (1st) 190010, ¶ 14. In resolving the motion for summary judgment, the court strictly construes the record against the moving party. *Id.* We review *de novo* the trial court's determination of a motion for summary judgment.

¶ 17                      B. The *De Minimis* Rule

¶ 18    To better explain the *de minimis* rule, we begin with the basics. To prevail on a claim of

negligence, the plaintiff must prove that the defendant owed her a duty, the defendant breached the duty owed, and the plaintiff's injury proximately resulted from the breach. *St. Martin v. First Hospitality Group, Inc.*, 2014 IL App (2d) 130505, ¶ 10. Duty is usually a legal question susceptible to resolution by a motion for summary judgment. *Id.*

¶ 19    In determining the existence of a duty, the court is required to balance competing factors. *Id.* ¶ 12. These factors include: (1) the reasonable foreseeability of the injury; (2) the likelihood of the injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. *Id.* Regarding the condition of a property, the owner or occupier of land does not absolutely ensure the safety of an invitee. *Id.* ¶ 11. The duty of the owner or occupier of any premises towards an invitee is that of reasonable care. *Id.* That means the owner or occupier must maintain the premises in a reasonably safe condition under the circumstances regarding the state of the premises or regarding the acts performed or omitted on them. *Id.*

¶ 20    The *de minimis* rule traces back to *Arvidson v. City of Elmhurst*, 11 Ill. 2d 601 (1957), which involved a height differential between adjacent slabs of concrete sidewalk. At its beginning, the *de minimis* rule involved municipalities and balanced the general rule requiring reasonably safe premises against the unreasonable economic burden that could ensue if pristine sidewalks were always required. *St. Martin*, 2014 IL App (2d) 130505, ¶ 13. The rule also reflected the reality of Illinois weather, which required concrete sidewalks to be constructed in slabs to allow for expansion, contraction, upheaval, and subsidence in the varying temperatures experienced throughout the year. *Id.* Thus, under the *de minimis* rule, courts uniformly held that, while a municipality had to keep its sidewalks in a reasonably safe condition, it had no duty to repair *de*

*minimis* defects. *Id.* Inevitably, as time passed, the *de minimis* rule was extended to private owners and occupiers of land. *Hartung v. Maple Investment & Development Corp.*, 243 Ill. App. 3d 811, 815 (1993).

¶ 21 The *de minimis* rule nevertheless exhibits a distinctly schizophrenic quality. In the first instance, the determination of whether the height differential between adjacent slabs of a sidewalk is *de minimis* is a fact-driven inquiry dependent on the entirety of the facts and circumstances. *St. Martin*, 2014 IL App (2d) 130505, ¶ 14 (citing *Arvidson*, 11 Ill. 2d at 604; *Hartung*, 243 Ill. App. 3d at 814; *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 122 (1993)). In the second instance, the "stumbling point" between actionable and *de minimis* occurs at a firm two inches. *Birck*, 241 Ill. App. 3d at 122 ("[t]he stumbling point for most of these cases seems to occur as the defect approaches two inches"; height difference of 1 ⅞ inches held to be *de minimis*); see also *Warner v. City of Chicago*, 72 Ill. 2d 100, 104-05 (1978) (height difference of 1 ⅛ inches was *de minimis*); *Putman v. Village of Bensenville*, 337 Ill. App. 3d 197, 202-03 (2003) (height difference of one inch was *de minimis*). The case-by-case factors that seem to impede the uniform application of the two-inch "stumbling point" include whether the subject sidewalk was commercial versus residential, the amount of foot traffic, the location of the defect relative to the property's ingress and egress, and the total amount of sidewalk to monitor. *St. Martin*, 2014 IL App (2d) 130505, ¶¶ 15-18. These sorts of factors are termed "aggravating circumstances" or "aggravating factors" in the case law and do not seem susceptible to easy categorization or application. Thus, where evidence of aggravating circumstances is presented, the question of duty is generally one for the finder of fact. *Id.* ¶ 15. However, if the plaintiff presents no evidence of any aggravating circumstances, then summary judgment will remain an appropriate avenue by which to determine

the question of the duty owed by the defendant to the plaintiff. *Id.* With these principles generally in mind, we turn to plaintiff's specific contentions.

¶ 22                              C. The *De Minimis* Rule Applied

¶ 23    Plaintiff challenges all aspects of the trial court's application of the *de minimis* rule pursuant to defendant's motion for summary judgment. Rather than attempt to parse plaintiff's arguments one by one, we shall specifically evaluate the trial court's judgment and apply the pertinent authority to the facts of this case. Thereafter, we shall deal with any remaining counterarguments as necessary.

¶ 24    The trial court initially evaluated the dimensions of the sidewalk defect and concluded that the defect would be deemed *de minimis* in the absence of aggravating circumstances. Specifically, the trial court noted that plaintiff had identified a specific photograph as truly and accurately depicting the state of the sidewalk at the time of her fall. The trial court also judged that the dimensions of the defect were 4 ½ inches in length, between 2 ½ and 3 inches in width, and ½ inch in depth.[2] Plaintiff, however, expressly declined to offer an opinion of the depth of the defect. There was, however, testimony from defendant's representative that, when he measured the depth

_____

[2] If we view "length" as being in the direction of the sidewalk and "width" being across the direction of the sidewalk, then the length of the defect is up to 3 inches and the width is 4 ½ inches. This does not seem to be clearly stated in the record but is evident in the photographs, and we believe our formulation comports with common usage and we will use it hereafter; it appears that the court flipped the dimensions so that the longer measurement was automatically the length.

of defect (purported to have been accomplished nearly 2 ½ years after the incident), he found it to be ½ to ¾ inch.

¶ 25    Plaintiff does not dispute the depth estimate offered by defendant but notes that, due to the time passed, the probative value of defendant's measurements ought to be significantly reduced. *Harris*, 315 Ill. App. 3d at 901 (citing *Warner v. City of Chicago*, 72 Ill. 2d 100, 104 (1978) ("the delay in obtaining [the measurement of the sidewalk displacement] greatly reduce[d] its probative value"). It is therefore curious that the trial court adopted the low end of the defendant's estimate of depth of the defect. It appears to us that the trial court attempted to ascertain on its own what the depth was by reading for itself the submitted photos which included a ruler to provide a measuring standard. This is beyond the trial court's role of determining only the existence of a genuine issue of material fact while adjudicating a motion for summary judgment. *Cook*, 2019 IL App (1st) 190010, ¶ 14. Indeed, in announcing that the depth was ½ inch, the trial court inappropriately usurped the province of the fact finder. With that said, however, it is nevertheless clear that, even accepting that the depth could have been as great as ¾ of an inch, neither plaintiff nor defendant produced any evidence to show that the depth of the defect even approached one inch, let alone the two-inch "stumbling point."

¶ 26    So, construing the record rigorously against defendant, as we must, the defect appears to be an approximately semicircular depression at the edge of one slab of concrete and abutting another slab of concrete that shows no obvious defects. The defect appears to be, at its greatest extent, up to three inches in length, about four inches in width, and under one inch in depth. The photos of the defect appear to show that there are two areas of the maximum depth, and the depression slopes toward those areas, but the pitch of the slope cannot be readily ascertained.

Finally, we note that plaintiff expressly testified that, on the day after her fall, she returned to the spot and placed her foot in the defect, which suggests, at the very least, that the toe of her size 5 boot fit into the defect and sunk below the level of the abutting sidewalk slab.

¶ 27    The trial court viewed the facts as presenting a simple height differential between adjacent slabs of concrete sidewalk. It did not, however, consider the effect of the depression leading to the height differential.

¶ 28    Many of the cases using the *de minimis* rule involve only the single dimension of a vertical height displacement. For example, in *St. Martin*, 2014 IL App (2d) 130505, ¶ 19, the defect was a height differential of less than two inches between adjacent slabs to which the *de minimis* rule was applied. In *Putman*, 337 Ill. App. 3d at 203-04, the *de minimis* rule barred the municipality's duty where there was a one-inch height differential between a sidewalk and curb. *Harris*, 315 Ill. App. 3d at 901-02, by contrast, involved a ¾-inch height differential at the building's entrance, but the location of the defect added another factor to consider, and the trial court declined to apply the *de minimis* rule under that circumstance.

¶ 29    The defect here, however, is not only the single dimension of vertical displacement; the defect possesses horizontal dimensions which the trial court did not consider. This makes the defect different than the vertical-displacement-only cases like *St. Martin* and *Putman*. The added horizontal dimensions of length and width may be deemed to add an additional circumstance, and the additional circumstance draws this case closer to those, like *Harris*, which considered other circumstances in addition to the vertical displacement.

¶ 30    We note that, as early as 1986, courts were beginning to grapple with three-dimensional defects encompassing vertical displacement with the horizontal components of length and width.

In *West v. City of Hoopeston*, 146 Ill. App. 3d 538, 540-41 (1986), the plaintiff stepped into a cracked area of a sidewalk near a car wash and fell. The dimensions of the defect were a vertical displacement of up to $^9/_{16}$ of an inch and a width of two inches. *Id.* at 541. The court's description of the defect suggest that the portion of the cracked area occurred between adjacent slabs; there was pebble-like debris in the cracked area, and it was inferred that weathering of the concrete was the cause of the cracked area. *Id.* The plaintiff testified that she stepped into that portion of the sidewalk and felt her toe strike something hard before she fell. *Id.*

¶ 31    The matter was tried to a jury verdict in favor of the plaintiff and the defendant appealed. *Id.* at 540. The defendant argued that the defect was *de minimis* and its motions for directed verdict or judgment notwithstanding the verdict should have been granted. *Id.* The court disagreed, holding expressly that "the width and depth of the allegedly defective area should be considered in determining whether that area is of a minor, nonactionable nature." *Id.* at 542. Moreover, the court held that "the broken area between the slabs was sufficiently wide that a reasonable man could anticipate danger to persons walking upon it." *Id.* We note that the width was estimated to be two inches, which comports with the two-inch "stumbling point" identified for the application of the *de minimis* rule, even though the dimension is now width and not height. *See id.* (the plaintiff estimated the cracked area to be about two inches wide; the defendant's measurements were the same). Although the procedural posture is distinguishable because the court was commenting on whether the trial court had properly adjudicated a motion for a directed verdict and a motion for judgment notwithstanding the verdict, the principle enunciated is consistent with considering whether the horizontal dimensions of a defect are such as to take the case outside of the *de minimis* rule. *Id.*

¶ 32    Plaintiff has consistently identified the defect as akin to a pothole, albeit a small one.  As noted, while the vertical displacement of the defect was under an inch, the length and width were two inches or more.  The trial court did not consider the horizontal dimensions and treated the matter as consisting only of a vertical displacement between adjacent sidewalk slabs.  This was error.  *West* teaches that the horizontal dimensions must also be considered when evaluating a defect occurring due to missing material from a sidewalk.  To this end, along with *West*, we find two cases to involve the consideration of all three dimensions: *Barrett v. FA Group, LLC*, 2017 IL App (1st) 170168, and *Morris v. Ingersoll Cutting Tools, Inc.*, 2013 IL App (2d) 120760.

¶ 33    In *Barrett*, the plaintiff stepped into a depression in a parking lot, the heel of her shoe became stuck, and she fell forward and was injured.  *Barrett*, 2017 IL App (1st) 170168, ¶ 12.  The pothole was several feet in length and width, and the depth was contested with the court deeming it to be two inches or less.  *Id.* ¶ 32.  The defendants moved for summary judgment contending that the height differential between the depression and the surrounding pavement was ½ inch and was therefore *de minimis*.  *Id.* ¶ 6.  The trial court granted the motion on the basis that the defect was *de minimis*, and the plaintiff appealed.  *Id.* ¶¶ 22-23.

¶ 34    The appellate court began by acknowledging that, if the case were to be decided by the height differential alone, it would fall within the purview of the *de minimis* rule.  *Id.* ¶ 32.  The court noted, however, that the plaintiff did not attribute her fall to the height differential, but to her foot becoming stuck in the broken pavement or asphalt upon stepping into the depression, and this mechanism of a fall was sufficient to remove the case from the straightforward application of the *de minimis* rule to only a height differential.  *Id.* ¶ 33.  The court also considered the circumstances of the occurrence, noting that the fall occurred in the parking lot of a business in a place where no

parking spots were marked, thus making it more likely that pedestrians would encounter the defect, and noting that the fall occurred at night in dim lighting conditions. *Id.* ¶ 35. The appellate court reversed the grant of summary judgment. *Id.* ¶ 37.

¶ 35    In *Morris*, 2013 IL App (2d) 120760, ¶ 3, the plaintiff fell in a loading bay as he exited his truck. Plaintiff testified that he tripped on the 1 ½-inch height difference between the pavement and the curb and that he observed a 2 ½-foot-long depression next to the broken curb, which itself had a one-foot-long depression. *Id.* ¶¶ 3-5. The defendants were granted summary judgment on the basis that the defect was *de minimis*. *Id.* ¶ 6.

¶ 36    We affirmed the trial court's judgment. Among the factors we considered were the height of the defect and its location. *Id.* ¶¶ 14-16. We noted particularly that the dimensions of the depression occurring in the loading bay were of a different character than if the depression were in a sidewalk. *Id.* ¶ 22. Thus, as in real estate, location is everything.

¶ 37    Here, plaintiff testified that she stepped and turned her ankle on the defect. When she was at home, she noticed that the toe of her boot was scuffed where it had not been before. This suggests that the mechanism of the fall was like those in *Barrett* and *West*, where there were horizontal aspects to each of the defects and these horizontal aspects seemed to be involved in the fall. *Barrett*, 2017 IL App (1st) 170168, ¶ 33 (the plaintiff's fall was due to stepping down into the defect and her heel becoming entrapped in the broken pavement); *West*, 146 Ill. App. 3d at 543 (the width of the defect was such that a reasonable person could anticipate danger; the plaintiff felt her toe strike something hard before she fell).

¶ 38    There are other aspects of similarity to *Barrett*. As in *Barrett*, the plaintiff testified that the lighting was dim. This fact takes on additional import because the defect was located not only in

a place where it was foreseeable pedestrians would be, but here, the sidewalk represented the ingress to the store from the further reaches of the parking lot, so it was designed to accommodate pedestrians, and pedestrians were expected to use the sidewalk when they visited the store. *Barrett*, 2017 IL App (1st) 170168, ¶ 35 (dim lighting around the defect; defect in an area in which pedestrians were foreseeable).

¶ 39 Finally, while *Morris* would seem to cut against plaintiff, there is guidance to be drawn from that case that reinforces our analysis and reliance on *Barrett* and *West*. In *Morris*, we held that a defect with a 1 ½-inch vertical displacement and more than two feet in width and one foot in length was *de minimis*, but this holding was based on the fact that the defect was located in a loading bay accepting commercial deliveries from large semi-tractor and trailer combinations. *Morris*, 2013 IL App (2d) 120760, ¶¶ 15-16. In particular, we commented that, "[w]hile a 2 ½–foot by 1–foot defect in a *sidewalk* may be a sufficient aggravating factor, the question here is whether those dimensions are aggravating factors in defendants' *loading bay*," indicating that the location of the defect and its environmental context are key to a determination whether to apply the *de minimis* rule. (Emphasis in original.) *Id.* ¶ 22. Thus, in *Morris*, the *de minimis* rule was applied precisely because the environment was one in which the passage of heavy commercial semi-tractor and trailer combinations, the intent of the loading bay to receive those trucks, and the primary users of the loading bay were not pedestrians, all combined to render the defect insignificant and one which a reasonable person would not expect to cause danger. Accordingly, we draw from *Morris* the admonition to carefully consider the overall physical context of the defect under consideration, which dovetails nicely with the admonition of *West*, that "the width and depth of the allegedly defective area should be considered in determining whether that area is of a minor,

nonactionable nature." *West*, 146 Ill. App. 3d at 542.

¶ 40    Thus we come to the crux of our analysis: the defect complained of here comprised a generally semicircular area some four inches in width, three inches in length and as much as ¾ inch in depth; the defect was located on the sidewalk of a store that furnished the only ingress and egress to the entrance from the further reaches of the parking lot; the lighting was described as dim or dark; and finally, plaintiff described her stumble and fall as occurring after she stepped into the defect and the toe of her size-5 boot apparently caught, resulting in its scuffing, which caused her ankle to turn and plaintiff to fall forward landing on and injuring her elbow.  The depth of the defect considered alone would clearly fall within the purview of the *de minimis* rule; however, *West*, *Barrett*, and *Morris* all indicate that we must consider all of the dimensions of a defect as well as the physical and environmental context.  Accordingly, we hold that, based on the facts presented, we cannot say as a matter of law that the defect was *de minimis* and the matter must be referred to the finder of fact for its determination of the issue of duty, if any, arising from the defect.  Based on this determination, we need not address plaintiff's remaining arguments, as they all touch on various other aspects of the application of the *de minimis* rule.

¶ 41                          C. Defendant's Contentions

¶ 42    Defendant argues that the defect was *de minimis*.  Defendant cites cases that all held that a sidewalk displacement of less than two inches generally is not actionable.  See *Morris*, 2013 IL App (2d) 120760, ¶ 14 (noting that the *de minimis* rule generally requires a two-inch height differential before it will be applied); *Warner*, 72 Ill. 2d at 104-05 (height differential of 1 ⅛ inches was *de minimis*); *Birck*, 241 Ill. App. 3d at 121-22 (height differential of 1 ⅞ inches was *de minimis*); *Putman*, 337 Ill. App. 3d at 202-03 (height differential of one inch was *de minimis*); *St.*

*Martin*, 2014 IL App (2d) 130505, ¶ 19 (height differential of 1 ½ to 1 ¾ inches was *de minimis*); *Hartung*, 243 Ill. App. 3d 816-17 (height differential of ½ to ¾ inch was *de minimis*). These cases, however, are concerned with the single dimension of vertical displacement and do not (and, from the facts of those cases, do not need to) consider the horizontal dimensions. As such, they provide little guidance where the defect and the mechanism of the fall included all dimensions, length, width, and depth. Thus, while defendant cites cases involving a single dimension of analysis, they are inapt to the facts and circumstances present here.

¶ 43    Defendant also cites *Gleason v. City of Chicago*, 190 Ill. App. 3d 1068, 1070-72 (1989), for the proposition that, as a matter of law, a ¼-inch crack was too slight to be actionable. In *Gleason*, the plaintiff fell when her toe became caught in a ¼ inch crack in the sidewalk. *Id.* at 1069. The court held that the defect was within the *de minimis* rule and affirmed the trial court's grant of summary judgment. *Id.* at 1070-72. In *Gleason*, the only dimension considered was the width of the crack. It is worth noting that *Gleason* distinguished *West*, on which we rely above, on the basis that there was a two-inch wide gap between the adjacent slabs of the sidewalk. *Id.* at 1070-71. Here, the gap between slabs of the sidewalk was up to three inches including the sloping defect, even though the depth of the defect was under an inch. Thus, *Gleason* is distinguishable on the same basis that *Gleason* itself distinguished *West*. Moreover, it appears that when the defect is embodied in a single analytical dimension, the two-inch stumbling point still obtains. When the defect is multi-dimensional, such as in *West*, with a horizontal measurement of two inches even though the vertical measurement was less than an inch, the trend seems to suggest that the defect falls outside the purview of the *de minimis* rule. Accordingly, *Gleason* is distinguishable.

¶ 44    Defendant also responds to plaintiff's arguments regarding other aspects of the application

of the *de minimis* rule, like the alleged aggravating circumstances of location, light level, actual distraction, and the like. As these factors played only a minimal role in our analysis, which was based upon the dimensions of the defect in both terms of the vertical displacement and the horizontal configuration of the defect, and regarding that we did not need to address plaintiff's further arguments, we likewise do not need to discuss defendant's responses to the further arguments. Moreover, to the extent that we considered additional factors, such as the location, lighting, and intended use of the sidewalk, this consideration was accomplished to provide the full physical context of the defect pursuant to *Barrett*, 2017 IL App (1st) 170168, ¶ 35, and *West*, 146 Ill. App. 3d at 542.

¶ 45     Finally, at its root, defendant's contention below was simply that, where the defect is *de minimis*, the land owner or occupier has no duty arising from the defect. Defendant reasoned that, because the defect was *de minimis*, there was no obligation to explore any aggravating factors because no duty attached. While this is a soundly constructed argument, if the defect is not *de minimis*, then the argument is refuted. That is the case here. The configuration of the defect (four inches in width, up to three inches in length, up to ¾ inch in depth) and its physical context was sufficient to remove this case from the purview of the *de minimis* rule. As we have rejected the fundamental premise of defendant's argument, we have likewise rejected defendant's arguments in support, and this includes (without needing to address them) defendant's responses to plaintiff's arguments addressing specific aspects of the *de minimis* rule.

¶ 46                                        III. CONCLUSION

¶ 47     For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and remanded.

¶ 48     Reversed and remanded.